Westlaw.

11/5/2003 NYLJ 4, (col. 4)                                              Page 1
 11/5/2003 N.Y.L.J. 4, (col. 4)

New York Law Journal
Volume 230
Copyright 2003 ALM Properties, Inc. All rights reserved

Wednesday, November 5, 2003

News

OUTSIDE COUNSEL

Government Witness Cooperation Agreements: A Defense Perspective

Jay Goldberg

 When a person accused of a crime decides to "cooperate" with the government, he and counsel meet with government officials and the prosecutor makes them aware of the crimes the government believes the accused committed. It is in the individual's interest to add to this list of crimes, so that if a witness cooperation agreement is obtained, the government will agree to a plea to crime or crimes far less than known to the government. In return, the individual agrees to testify as a witness for the government. The cooperation agreement normally is combined with the plea agreement.

 Some individuals offering to cooperate have a long history of criminal conduct. In a remarkable release issued in 1988 to all federal prosecutors, the then chief of the Criminal Division of the Department of Justice warned that witnesses/informers are "likely to say and do almost anything to get ... out of trouble ... including ... lying, committing perjury, manufacturing evidence, soliciting others to corroborate their lies with more lies. ... Many are outright conscienceless sociopaths to whom truth is a wholly meaningless concept." [FN1] He later reiterated his views as a judge on the U.S. Court of Appeals for the Ninth Circuit. [FN2]

 The conclusion from this is clear: Such witnesses should not have their credibility improperly enhanced by the government. Nonetheless, apparently the government does not see it that way and it misuses two important provisions of the cooperation agreement in a way unfairly designed to convince the jury that the witness has had his information verified before trial by an investigative agency such as the FBI and that the witness would be severely penalized were the witness to fail to tell the truth.

An Untold Story

 Until now, there has been an untold story as to how these provisions found their way into the cooperation agreement and the purposes they were designed to serve. It is suggested now if known, a court should prevent the government from making reference to either or both of these provisions.

11/5/2003 NYLJ 4, (col. 4) Page 2
 11/5/2003 N.Y.L.J. 4, (col. 4)

More than 30 years ago a number of so-called "racketeers" were scheduled for trial in the Southern District of New York. The lead government witness had a long and sordid criminal history, but he had not been prosecuted for these many crimes. The government allowed him to plead guilty to a limited number of crimes in return for his testimony. The government knew the way in which the defense in cross-examination would capitalize on the benefits the government gave to the witness. The prosecutor considered ways to blunt the force of the defense cross examination. What resulted were provisions in the agreement that if disclosed at trial would unfairly deliver prejudice to the defendant. However, reliance on these provisions would also mislead the jury.

The first of the questioned provisions of the agreement requires the witness to be debriefed by an agency such as the FBI concerning his knowledge and participation in any criminal activity. The witness at the debriefing session must "give complete, truthful and accurate information." It is the government alone that determines whether the witness has given truthful and accurate information.

This provision was made a part of the cooperation agreement to wrongly convey that when the government calls the witness to the stand it has determined through methods of verification not disclosed that the witness has performed as agreed to in the debriefing session. This provision was inserted into the cooperation agreement for the prohibited purpose of allowing the government to vouch for the credibility of the witness. The undo harm to the defense is apparent.

Penalty Provision

What is most disturbing is the second questioned provision commonly referred to by counsel as the "penalty provision." It provides that if the witness gives false testimony he may be prosecuted for any and all crimes the government is aware of, which may be many more than those covered by the agreement.

The witness invariably is asked by the prosecutor whether he understands the penalty that would result from untruthful testimony. The witness responds that this is his understanding lest there be complete, accurate and truthful testimony.

Anyone hearing this or reading this provision in the cooperation agreement would be of the view that few witnesses would ever risk such harm. However, the witness, government counsel and defense counsel all know that this provision has never been enforced.

The government takes no steps to correct the testimony -- rather it wrongly exploits it. More importantly, the jury does not know that this provision is more apparent than real. The court prohibits defense comment to the effect that there is no record that the government has ever enforced this provision. It may be that no one in the courtroom is aware that the real purpose of adding this provision decades ago was to chill cross examination.

In criminal cases the government sums up first and last. The prosecutor strongly argues that the penalty provision assures truth telling. The argument is made that by reason of the penalty the witness knows that unless complete, accurate and truthful testimony is given "all bets are off" and the witness risks being

Copyright © 2005 The New York Law Pub. Co.

prosecuted for all of his crimes.

The government's argument proceeds further and asks the jury to consider whether the witness, as self motivated as he is, as shown by the many, many crimes the witness has committed would ever run the risk of being prosecuted for all of these crimes.

In reality, as noted, there is no such risk. There is no justification whatsoever for the way the trial courts treat this especially when this provision found its way into the agreement in order to hamper the effect of cross-examination.

In 1978, a judge addressed the problems of the cooperation agreement, writing that it was unfair to give the jury the impression that the prosecutor has been able to "make sure" that the witness is telling the truth and that the witness will be punished for untruthful testimony in the way provided for in the penalty provision of the agreement. [FN3]

There is no reason that trial courts tolerate a practice that serves to mislead a jury. A federal prosecutor "carries a special aura of legitimacy about him." [FN4] Testimony the prosecutor knows or should know is intentionally inaccurate or misleading and nonetheless allows it to go uncorrected acts in a way "incompatible" with "rudimentary demands of justice." [FN5]

The prosecutor must correct such testimony when it is first given. Further, since a prosecutor is "cloaked with the authority of the United States government" and "stands before the jury as the community's representative" she may not vouch for the witnesses' credibility by suggesting that, prior to the witness giving testimony, the government determined through investigative means that the witness' testimony is true. [FN6] Nonetheless, the misuse of the cooperation agreement continues.

The penalty provision was last referred to in 1988 by U.S. District Judge Eugene Nickerson in United States v. Kurzbam, 88 CR 441 (E.D.N.Y.).

There, the government sought to read to the jury this provision of the Cooperation Agreement in order to demonstrate the Sword of Damocles that assured the witness' truth-telling. The court, at page 360 of the trial transcript, foreclosed the government from its typical approach, stating: "If you [the assistant U.S. attorney] emphasize this or have him [the witness] read it I will tell you, you are going to get a charge, it's highly unlikely that the Government -- and I take this from ... United States v. Arroyo Angulo. It is highly unlikely that the Government is going to declare an agreement null and void because someone gives testimony that's false and too favorable to the Government.'

Conclusion

Given the purpose of these provisions and in particular the lack of enforcement of the so-called "penalty provision," the court should not permit reference to either provision.

Were a court to disagree with this blanket prohibition, the government should be required at a hearing to show whether any witness it had later determined to have

Copyright © 2005 The New York Law Pub. Co.

11/5/2003 NYLJ 4, (col. 4)                                          Page 4
11/5/2003 N.Y.L.J. 4, (col. 4)

given false testimony was thereafter prosecuted for all crimes known to the government.

Failing to do so -- and it will fail even if it canvases all judicial districts in the United States -- the court should not permit testimony about these provisions or any summation based upon them.

If the cooperation agreement is received in evidence these provisions should be redacted. A jury should not be made to deliberate on the basis of inaccurate and misleading proof proffered by prosecutors who are there, we are instructed, to serve truth and justice. [FN7]

Jay Goldberg is a principal in the Law Offices of Jay Goldberg.

FN1. Trott, United States Department of Justice, "Prosecution of Public Corruption Cases" at pp. 117-18 (Feb. 1988).

FN2. United States v. Bernal-Obeso, 989 F.2d 331-333.

FN3. United States v. Arroyo-Angulo, 580 F.2d 1137, 1149-50 (2d Cir. 1978).

FN4. United States v. Bess, 593 F.2d 749 (6th Cir. 1979).

FN5. Giglio v. United States, 4065 U.S. 150 (1972).

FN6. United States v. Modica, 663 F.2d at 1178-9 (2d Cir.).

FN7. Berger v. United States, 295 U.S. 78, 88 (1935).

11/5/2003 NYLJ 4, (col. 4)

END OF DOCUMENT

Copyright © 2005 The New York Law Pub. Co.