LAW OFFICES OF
# JAY GOLDBERG, P.C.

250 PARK AVENUE
TWENTIETH FLOOR
NEW YORK, NY 10177-0077

TELEPHONE (212) 983-6000
TELECOPIER (212) 983-6008

April 17, 2006

Honorable Kimba M. Wood
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      RE:    <u>United States v. Ianniello et al, 05 Cr. 774 (KMW)</u>

Dear Judge Wood:

      I have previously sent Your Honor two *in limine* motions in the form of a letter with exhibits: one having to do with the question of audibility, supported by the report from the usual government audibility expert, Carroll Audio; and the other having to do with the misuse of portions of the witness cooperation agreement born of a bad faith purpose to bolster the credibility of a government witness. I hope that this is the appropriate way to raise issues, for I recall Your Honor stating a preference for requests to be in writing.

      I now send my third *in limine* motion, and that has to do <u>not with the issue of severance</u> but remedial measures with respect to the out of court declarations of co-defendant Julius Bernstein were there to be a joint trial.

      Ianniello is charged with a number of counts, i.e. predicate act 1 (page 14) - obstruction; predicate act 2 (page 15) - extortion and labor racketeering; predicate act 3 (page 17) - extortion and labor racketeering; count 2 (page 26) - RICO conspiracy; counts 3 and 4 (page 28) - obstruction of justice; count 7 (page 31) - extortion; count 8 (page 32) - extortion; count 9 (page 33) - influencing the operation of an employee benefit plan; count 10 (page 34) - influencing the operation of an employee benefit plan.

The counts depend upon the credibility of Mr. Bernstein. In words or substance Bernstein allegedly told others that he was "with" Matty, that this was Matty's union, and at times to the government that Matty had nothing to do with the union. Were Bernstein and Ianniello tried separately, Ianniello would have a number of rights that would be lost due to the government's choice to have a joint trial. Ianniello would not be able to raise his inability to test the veracity of Bernstein, or even his inability to call Bernstein to the stand. He would not be able to point out that no one has taken the stand to support Bernstein's credibility, perhaps including Bernstein himself, and that there ought to be no conviction based upon the word of an untested out of court declarant. All these rights are now lost because courts at times mistakenly give precedence to a co-defendant's Fifth Amendment rights over the right of confrontation protected by the Sixth Amendment.

The Fifth Amendment right has nothing whatever to do with a defendant or a witness' truth telling. "The Fifth Amendment's privilege against self-incrimination is not an adjunct to the ascertainment of truth." *Tehan v. Shott*, 382 U.S. 406 (1966). It is based on a principle much like the Fourth Amendment, namely, the right to be let alone. It is of comparative recent vintage, compared with the centuries old right of confrontation, which does bear directly upon truth telling. See *Crawford v. Washington*, 124 S.Ct. 1354 (2004) and Judge Wisdom dissenting in *Deluna v. U.S.*, 308 F.2d 140 (5th Cir., 1962).

Were Bernstein to be on trial with the defendant Ianniello, a jury believing that Ianniello was a superior in the claimed criminal enterprise, has directed Bernstein not to testify. A juror may believe, if Ianniello were innocent, why didn't he exercise his power to require Bernstein to testify. Why because of the government's choice should Ianniello be deprived of the opportunity to comment to the jury that the out of court declarant is not available to have his veracity tested.

If there is to be diminution of rights because the government has chosen to join the defendants, either Bernstein or the government should suffer prejudice. While the oft repeated expression that judicial economy is the reason for permitting a joint trial, it does not answer the question of whether a constitutional right founded as it is on the ascertainment of truth, should be lost, either because the government or the co-defendant will be prejudiced. As for the government being harmed, it should bear the burden since it made the choice to join the defendants.

Bernstein's right to be let alone has nothing whatever to do with the jury's role to assess guilt or innocence. Where a co-defendant in his out of court declaration delivers what amounts to deadly poison to a defendant and this is known to the government which nonetheless joins the defendants, it cannot be said that the defendant has received a fair trial with adequate protection accorded his Sixth Amendment rights. Annexed hereto is an article that deals with the inequity in mistakenly favoring the Fifth over the Sixth Amendment right.

For the reasons stated above, if there is to be a joint trial a way must be found to ensure protection to a right which appeared in every single state constitution in existence at the time of the framing of the United States Constitution. The same cannot be said of the Fifth Amendment, which also finds little support abroad and has a limited purpose.

Respectfully,

Jay Goldberg

cc: Timothy Treanor
Assistant United States Attorney

Westlaw

9/12/2005 NYLJ 4, (col. 4)    Page 1

9/12/2005 N.Y.L.J. 4, (col. 4)

New York Law Journal
Volume 234
Copyright 2005 ALM Properties, Inc. All rights reserved.

Monday, September 12, 2005

OUTSIDE COUNSEL

News

Multidefendant Trials: Sixth Amendment Rights Get Little Protection

Confronting an Accuser

The Problem at Issue

The Out-of-Court Declarant

Amendments and Tension

Inference of Truthfulness

Conclusion

**Jay Goldberg**

Much enthusiasm followed the decision in Crawford v. Washington, 124 SCt 1354 (2004). If that were meant to convey that defendants will now receive their full panoply of rights guaranteed to them under the Sixth Amendment, the assessment of the effect of Crawford is wide of the mark.

An extant principle of law serves to deny an accused his right of confrontation in the case where **multiple defendants** are on trial for having conspired to commit a crime. The subject has escaped critical analysis, but the principle works to prejudice at least one or more of the defendants by preferring the protections of the Fifth Amendment to those of the Sixth Amendment.

Crawford rests on the principle that a defendant cannot adequately present his defense without being able to confront his accuser, or at least test the credibility of an out-of-court declarant, in that case his wife, a co-conspirator. She made a full confession to law enforcement officers implicating Crawford in the crimes. The holding was not remarkable for even under pre-Crawford rulings, such a statement made to law enforcement post-conspiracy would be inadmissible.

The defense bar always sought to limit any expansion of exceptions to the hearsay rules. Nonetheless, prosecutors making use of FedREvidRules 803 (24) and 804

Copyright © 2006 The New York Law Pub. Co.

9/12/2005 NYLJ 4, (col. 4)          Page 2

9/12/2005 N.Y.L.J. 4, (col. 4)

(b)(5), the so-called residuary provisions of the hearsay exceptions, successfully expanded the rules to permit the admission of a codefendant's plea allocution with the limiting instruction that it was admitted only as proof of the conspiracy, not as proof of a defendant's membership therein. As Justice Robert Jackson wrote, 'the naive assumption that prejudicial effects can be overcome by instructions to the jury...all practicing lawyers know to be unmitigated fiction.' [FN1]

Crawford did exert a brake on the admissibility of out-of-court testimonial proof previously admitted for the truth of the matters asserted. Henceforth, there is no balancing test that would admit out-of-court statements that are deemed testimonial. [FN2] However, Crawford did not define what is 'testimonial.' To the dismay of criminal practitioners, the circuit has ruled that out-of-court statements made by a coconspirator in the course and furtherance of the conspiracy are not 'testimonial' and may admitted for the truth, whether or not the coconspirator is available. [FN3]

While the bar and judiciary grapple over the question of whether proof is or is not 'testimonial,' a little analyzed, but pernicious intrusion into Sixth Amendment rights continues unabated. As noted earlier, the problem arises in a joint-defendant trial where there exists a serious tension between the Fifth and Sixth Amendments.

The following example brings into focus the problem confronting the bar and courts:

An individual ('lender') loans money at extortionate rates to a victim. In the course of lending the money he makes repeated statements that the money is not his, it is the defendant's, and that the defendant will be angered if the money is not repaid. The lender tells the victim that he is connected with the defendant. He also tells the victim that he will see this for himself for the defendant will be picking him up at the victim's office. The victim sees this but does not overhear any conversation. [FN4]

Assume the lender is not available and the defendant is tried alone. Defendant's counsel may argue either that the victim is not telling the truth as to what the lender said, but more than likely the defendant's counsel will argue that the lender was not authorized to use defendant's name for he was not involved.

It is not unusual for the defense to obtain from cross-examination of the FBI case agent that is it not uncommon for a lender to use another person's name in connection with loaning funds. While this has the risk that the jury will be prejudiced against the defendant believing the use of the defendant's name connotes that the defendant is a bad man, it remains for effective counsel to convince the jury that whatever they may think about the defendant, 'this case' is concerned with one discreet issue limited to whether the lender was authorized to use the defendant's name. Jurors take their role seriously and acquittals are obtained by not contesting a collateral issue. In the final analysis, the government's case will rise or fall on the credibility, or lack there of, with respect to the lender's out-of-court declaration.

The central argument of the defense will be that the jury must consider that

Copyright © 2006 The New York Law Pub. Co.

there is no in-court testimony from the lender, there is silence from the witness stand, and no effective way to assess the truth of the lender's statement. Counsel will argue that the victim having seen the lender and defendant together does not advance the government's case. Counsel will appropriately further argue that cross-examination is the surest way to uncover falsity. A juror's assessment of the truth or falsity of the lender's statement regarding his claimed conspiratorial relationship with the defendant is best made by observation of the demeanor of the lender as he undergoes cross-examination.

How, short of cross-examination, is one to determine whether the lender was merely using the name of the defendant to assure repayment of the loan? Did the defendant know or ever authorize the lender to use of his name? Is there any proof the defendant advanced any the monies to the victim through the lender? Or any proof the defendant received any proceeds from the victim? This example may oversimplify the quantum of proof offered by the government in a given case, but the principle remains, the failure of the out-of-court declarant to appear as a witness is 'worth its weight in gold.'

When the Federal Rules of Evidence were promulgated Congress, on the recommendation of the Supreme Court, enacted an extraordinarily critical rule to address the circumstance where the declarant does not testify, that is Rule 806. Rule 806 provides that when an out-of-court declaration is admitted, the declarant's credibility may be attacked by any evidence that would be admissible had the declarant testified as a witness. Evidence of a statement or conduct by a declarant made at any time inconsistent with the admitted statement is not subject to any requirement that the absent declarant be given any opportunity for explanation. Rule 806 is not limited to prior inconsistent statements, every piece of admissible evidence that casts doubt on the credibility of the declarant, such as his prior criminal record, any psychiatric record, and with the court's permission, any other misconduct bearing on his credibility may be considered by the jury.

One may argue that since it was the government that offered the out-of-court testimony on its case-in-chief, the obligations under Brady v. Maryland, should be triggered to require the government to make available any impeachment material that it has with respect to the out-of-court declarant. This Brady issue has never been addressed by any court. Practitioners in this circuit unfortunately can be assured that with the restrictive approach taken by the circuit in United States v. Coppa, 267 F3d 132 (2d Cir. 2001) the government will not be required to furnish any impeachment material. The gathering of the material will then be left to the defense.

The defense summation will weigh heavy in favor of the defendant, for so much can be made of the proof that has been gathered to impeach the lender, but more particularly his absence from the stand. The absence of the lender, the reliance by the government on the out-of-court declaration of the lender will, in most cases, convince the jury that there is a reasonable doubt of defendant's involvement.

The situation facing a defendant is materially different in a case where there is a joint trial of the lender and the defendant. Simply stated, the defendant cannot

Copyright © 2006 The New York Law Pub. Co.

receive the fair trial the Sixth Amendment dictates by reason of the tension that exists between the lender's Fifth Amendment rights and the defendant's right of confrontation and ability to present a defense. The Fifth Amendment right of the lender will trump the defendant's Sixth Amendment rights. That is the consequence of the defendant having the lender at the defense table. The government will offer the out-of-court statement of the lender and it will be admitted after the court makes its necessary determination.

Assume the victim is credible. But, the lender's defense is that he did not loan monies at extortionate rates of interest. The victim has testified to the out-of-court statements of the lender. The defendant will have to sit watching the lender's failing efforts to shake the victim's testimony. That unsuccessful cross-examination will lead the jury to believe that the loan had been made and that the lender is protecting the defendant. The best that defense counsel can do on cross-examination is develop that the victim does not have personal knowledge as to whether the defendant was involved. This is woefully inadequate to protect the defendant's rights.

The use of Rule 806 will be not be available to the defendant if the lender chooses not to testify. Lender's counsel will object and argue that the reason the lender did not testify was to avoid being impeached by proof of his criminal record, his psychiatric record, and the acts of misconduct affecting his credibility. The court most likely will sustain the lender's objection.

This denies the defendant a critical tool to impeach the lender's out-of-court declaration. The jury having learned that the defendant is so important and believing at least that his name has been used, will wonder why the defendant did not call the lender as a witness to support the claim that his name was used without knowledge or authority and that he had nothing to do with the conduct of the lender. Nevertheless, the law is firmly established that neither the court, government, nor the defendant may make any reference or allusion to the fact that the lender did not testify. And so, the defendant is foreclosed from explaining to the jury why he did not call the lender as a witness. [FN5]

If the lender does not take the stand, the defendant will be stripped of the important argument that without the testimony of the lender, without the cross-examination of the lender, or the jury's opportunity to observe his demeanor and consider any criminal or psychiatric record, the out-of-court statement made to the victim should be rejected. In the final analysis, the defendant will have to sit back at the defense table absorbing all of the incriminatory out-of-court statements of the lender without weapons needed to present a defense.

There is no case holding otherwise, namely that the defendant can resort to any argument that the failure to be able to call the lender as a witness or the lender choosing not to testify, should be considered by the jury as creating an inference against the truthfulness of the out-of-court statement. [FN6]

The situation is no different were the defendant to testify and his lawyer in summation to point out that he is the only one to testify as to the truth or falsity of the claimed incriminatory statement. [FN7] In short, the lender's Fifth Amendment right is sacrosanct in a contest with the defendant's Sixth Amendment

Copyright © 2006 The New York Law Pub. Co.

9/12/2005 NYLJ 4, (col. 4) Page 5

9/12/2005 N.Y.L.J. 4, (col. 4)

right.

The defense must turn to the discretionary remedy of a severance pursuant to FedRCrimPRule 14. The highly respected Judge John Miner Wisdom first dealt with this thorny problem in DeLuna v. United States, 308 F2d 140 (5th Cir. 1962) petition for rehearing denied 324 F2d 375 (1963) holding that where there are antagonistic defenses with one defendant accusing another, there is a per se remedy of a severance. The court was divided with a concurring opinion arguing that severance was discretionary.

The Supreme Court in 1993 in the case of Zafiro v. United States, 506 US 534 (1993) held that mutually antagonistic defenses, hostility among defendants, or the attempt by one defendant to exculpate himself by incriminating another defendant does not require that defendants be tried separately. The Court did not consider how limited the rights of one defendant are when this occurs. However, in our example the defendant and the lender are not accusing one another. The lender is claiming that he never lent the money at illegal rates, or even referred to the defendant on any occasion.

Following Zafiro, the circuit became more inclined to uphold the denial of a severance. For example, it affirmed the denial of relief in a case where one defendant testified a codefendant committed murder and attempted to murder him. [FN8] Counsel generally fail to secure such a severance with courts stating, 'defendants indicted together should be tried together and judicial economy too requires this.'

The last remedy available to a defendant, but so seldom granted, is a motion under United States v. Finkelstein, 526 F2d 517 (2d Cir. 1975), which would require in the example the affidavit of the lender. The affidavit would have to represent that the lender will give testimony denying that the defendant was involved or that he mentioned the defendant's name. The affiant must represent that he will testify at a separate trial and waive his right of self-incrimination. If, however, there is a likelihood that the testimony will be subjected to damaging impeachment, that the affiant's offer to give exculpatory information is conditioned upon his being tried first, or that judicial economy augers against separate trials, the motion will be denied. [FN9]

Justice simply cannot be served where the result favors a defendant's Fifth Amendment rights over another defendant's Sixth Amendment rights. A defendant should be able to explain why he was unable to call the lender to testify or impeach the out-of-court declaration, for after all, confrontation is the essence of Crawford. Without such a right, Crawford, rather than breathing new life into the Confrontation Clause, only delivers shallow breath in support of Sixth Amendment rights in a joint defendant trial.

Our judicial system, Justice Jackson wrote, has made a unique contribution to the science of government, most assuredly not so for the reason that it achieves economy in the trial of cases; but rather, for the reason that it recognizes that justice is the main function of any criminal justice system.

FN1. Krulewitch v. United States, 336 U.S. 440 (1949).

Copyright © 2006 The New York Law Pub. Co.

9/12/2005 NYLJ 4, (col. 4) Page 6

9/12/2005 N.Y.L.J. 4, (col. 4)

FN2. c.f. Ohio v. Roberts, 448 U.S. 56 (1980)

FN3. United States v. Saget, 377 F.3d 223 (2d. Cir. 2004); United States v. Logan, 2005 WL 1939703 (2d Cir. Aug. 15, 2005)

FN4. There should be little difficulty in having the statement of the lender admitted as a coconspirator statement. The court is given the responsibility to determine whether there was a conspiracy and the defendant a member of that conspiracy under the test of Bourjailay v. United States, 483 U.S. 171 (1987). The Court is to determine this as a matter of law, under Rule 104. The court may utilize the contents of the lender's out-of-court statement and other indicia, which may well, be the defendant's appearance, at the appointed time, at the victim's place of business. The prior practice of relying on the lender's statements alone, as sufficient proof of the conspiracy is no longer permitted with the amendment of Rule 801(d)(2)(E). The existence of a conspiracy and the defendant's membership in it must be proved only by a preponderance of evidence for the lender's statement to be admitted against the defendant.

FN5. Hayes v. United States, 329 F.2d 209 (8th Cir. 1964) cert. den. 377 U.S. 980 (1965)

FN6. United State v. Caci, 401 F.2d 664 (2d Cir. 1968); United States v. Coleman, 7 F.3d 1500 (10th Cir. 1993).

FN7. United States v. Coleman, supra.

FN8. United States v. Diaz, 176 F.3d 103 (2d Cir. 1993); see also United States v. Harwood, 998 F.2d 91 (2d Cir. 1993)

FN9. United State v. Gay, 567 F.2d at 919-20; United States v. Duzac, 612 F.2d 911, 912 (5th Cir.) cert den. 49 U.S. 1012 (1980); United States v. Boscia, 573 F.2d 826 (3d Cir. 1977); The defendant may also argue the need for the lender's testimony is so essential that the court should order the prosecutor to grant the lender immunity so that he can testify without any risk to his interests. In the 25 years since the decision relief has never been granted. United States v. Turkish, 623 F2d 769 (2d Cir. 1980)

Jay Goldbergis a member of the Law Offices of **Jay Goldberg**.

9/12/2005 NYLJ 4, (col. 4)

END OF DOCUMENT

Copyright © 2006 The New York Law Pub. Co.