LAW OFFICES OF
JAY GOLDBERG, P.C.

250 PARK AVENUE
TWENTIETH FLOOR
NEW YORK, NY 10177-0077

TELEPHONE (212) 983-6000
TELECOPIER (212) 983-6008

June 20, 2006

Honorable Kimba M. Wood
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    RE: <u>United States v. Ianniello et al</u>, 05 Cr. 774 (KMW)

Dear Judge Wood:

  I enclose two letters received from the Government. They are filled with inaccuracies and make it clear, we respectfully submit, that there is no way the defendants can be ready for a fair trial on September 5, 2006 or for that matter an audibility hearing on July 5, 2006.

<u>The June 16, 2006 Letter from the Government</u>

  There would be repeated audibility hearings concerned with the 31 conversations proffered by the Government out of 2100 ("the Government has provided the defendant with draft transcripts of almost all of the recorded sessions" -- this is not so, for ten of the 63 conversations the Government intends to use at trial are missing and more than 2000 transcripts are missing). The Government claims that of the 63 conversations the "vast majority of these recordings are audible and intelligible" but that is not true since in just one among many of the conversations, for example one session has 231 unintelligibles, plus huge gaps in conversations noted by the Government transcript as inaudible or unintelligible in bold lettering. There are many more.

  The defendants did not identify all sessions which are inaudible but merely gave a sample for the audibility hearing, for that is what the Court directed. If the Government wants to burden the Court with listening to the remaining 2100 conversations, we will provide an appropriate list. There is no claim that the

Government has to use the best equipment, but it has to use equipment that reliably captures sounds and not equipment that pales to inaudibility when compared with a cheap tape recorder. As per Judge Kahn, we do not seek to suppress 20 conversations: we seek to suppress all of the conversations on the ground that the Government had adequate opportunity to determine that its method of recording should have been recorded at a substantially different rate so that evidence could be preserved. The Government knew quite well early on that the method used to record, which is not the usual practice of the FBI, was inadequate to the task.

The Government claims that our objection is that it "failed to capture some of the sounds." From the total number of recordings submitted by the Government there are 2,304 inaudibles, and sounds which cannot be retrieved due to the method of recording by the Government. The claim is that the defendant has not identified "any particular statements that were not captured at the table." How is it possible to recollect what was said, but is not on the Government transcripts? That should not be the responsibility of the defendants.

## The June 19, 2006 Letter From the Government

This document makes it clear that a September 5, 2006 trial date is not realistic. First, the Government represented (we do not believe I would claim they are bound) that the 63 transcripts turned over, in addition to the phone tapes, are the bulk of their case. It now appears that the Government is intending to "reformat these draft transcripts" the meaning of which is difficult to glean. But then again, with the enormous amount of inaudibles, transcripts are difficult to craft. The Government plans to offer a conversation involving Ianniello from the early 1980's, but has not furnished a recording or a transcript. In addition, 26 new tapes (so called Peluso tapes) are referred to without transcript. These are yet to be turned over. It is believed they are consensual tapes and given the expected background of music and large numbers of people in restaurants and the like it will be a time consuming undertaking to make transcripts. It must be noted that the Government has previously turned over 27 "Peluso" sessions with no transcripts. These are inaudible and a hearing will be required for these as well.

In sum, the Government intends to furnish additional so-called "table" conversations, and audibility there will be in question. It is for this reason that until

all conversations are turned over there should be no audibility hearing. As for the trial date, and the defendants' need to prepare, we have 2100 conversations at the "table" that are indecipherable, and the Government promised to furnish transcripts as to the Peluso conversations which now number in excess of 50 recordings.

      This is not a case where the Government's equipment malfunctioned through no fault of its own. This is a case where from the early time of the surveillance the Government was aware that it was recording at an incorrect sampling rate, and that sounds were being missed and chunks of conversations were not recorded. There was adequate time to take corrective action. The defendant is entitled to the preservation of evidence. But the Government proceeded nonetheless on a path that led to a minuscule portion of claimed audible tapes. Given the Government's behavior in which we claim fault, the table tapes should be suppressed, and the audibility hearing and the trial continued.

                                                   Respectfully,

                                                   Jay Goldberg

cc:    Timothy Treanor
        Assistant United States Attorney
        All counsel



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 19, 2006

[*See* Cover Page for Distribution List]

Re: <u>United States v. Matthew Ianniello, et al.</u>
05 Cr. 774 (KMW)

Dear Counsel:

This letter provides additional discovery pursuant to Rule 16(a) of the Federal Rules of Criminal Procedure, and with the same understandings set forth in our initial discovery letter, dated September 21, 2005. The following items are available to you for copying at: Jagg Management Corporation, 52-08 Grand Avenue, Maspeth, New York (please contact Bruno at (718) 381-8560):

1. A set of draft transcripts of recorded conversations intercepted on the IANNIELLO PHONE and the YANNUCCI PHONE during the course of the investigation of this matter (Bates range 2439-2542). These drafts are governed by your stipulation regarding their use and distribution;

2. An unredacted set of applications for interception of communications at THE TABLE and on the IANNIELLO PHONE and the YANNUCCI PHONE. (Bates range 2543-3724). Until recently, certain information was under protective order and accordingly was redacted from the set that was initially available to you;

3. A copy of Matthew Ianniello's 1990 phone book and photo from FCI Otisville. (Bates range 3725-3749);

4. Five draft transcripts from conversations recorded at THE TABLE, including: Session # 160 (November 16, 2004); Session # 337 (February 8, 2005); Session # 493 (December 21, 2004); Session # 562 (December 28, 2004); and Session # 992 (April 8, 20045). (Bates range 3750-3775). These drafts are governed by your stipulation regarding their use and distribution.

We plan to reformat these draft transcripts and redistribute them in advance of the audibility hearing. In addition, we expect to distribute in the near future draft transcripts of four additional sessions, including Session # 516 (before January 10, 2005); Session # 534 (before January 10, 2005); Session # 511 (after January 10, 2005); and Session # 1158 (after January 10, 2005);

5. A draft transcript of one intercepted conversation made at the Palma Boy Social Club, as set forth beow, involving Ianniello. (Bates range 3776-3779);

6. Surveillance photos from 1983-1985 at the Palma Boy Social Club. (Bates range 3780-3814);

7. Documents related to a search warrant executed at the home of Matthew Ianniello on July 19, 2005, including two supporting affidavits and the search warrant returns listing items seized. (Bates range 3815-4054); and

8. A replacement copy of a CD from the IANNIELLO PHONE (954) 614-0823 that is identified as vol. 8 of 11 containing calls #2101-2400. Previously, the available set mistakenly had a duplicate of vol. 7 of 11 in its place.

The Government is also hereby identifying additional recorded consensual recordings that were made by Peter Peluso and that the Government intends to use at the trial of this matter: 343D-E (September 9, 2004); 344A-B (September 10, 2004); 347A-B (September 14, 2004); 348A (September 15, 2004); 349A (September 16, 2004); 349B-C (September 16, 2004); 354A (September 23, 2004); 360A-D (September 30, 2004); 360E (September 30, 2004); 387A-B (November 4, 2004); 35P (April 5, 2005); 53P (May 7, 2005); 68P (June 6, 2005); 81P (July 1, 2005); 83P (July 8, 2005); 84P (July 11, 2005); 87P (July 14, 2005); 94P1 (July 28, 2005); 94P2 (July 29, 2005); 95P (July 30, 2005); 109P (August 31, 2005); 110P (September 1, 2005); 116P (September 8, 2005); 118P (September 10, 2005); 119P2 (September 12, 2005); 121P (September 15, 2005). As stated in our previous discovery letter, all Peluso recordings are available to you for copying at DupeCoop (contact John Palermo at 973-895-1359).

The Government is also hereby making available for copying a single audiotape recording of defendant Joseph Yannucci obtained pursuant to orders issued in or about 2005 by the Honorable Sterling Johnson, United States District Judge for the Eastern District of New York, authorizing the interception of wire communications. The Government does not presently intend to make use of this recording in its case-in-chief.

The Government is also hereby making available to you various materials relating to the interception of oral communications within the Palma Boy Social Club, 416 East 115th Street, New York, New York between 1983 and 1985 (Ianniello was intercepted at this time). If you wish to make copies of these items, please let us know.

All Defense Counsel                    -3-                         June 19, 2006

Please call one of us if you have any questions regarding this matter.

                              Very truly yours,

                              MICHAEL J. GARCIA
                              United States Attorney
                              Southern District of New York

By: _____
     Timothy J. Treanor/Benjamin Gruenstein
     Assistant United States Attorneys
     (212) 637-2362/2315



U.S. Department of Justice

United States Attorney
Southern District of New York

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 16, 2006

**BY HAND**

Honorable Kimba M. Wood
United States District Court
Southern District of New York
500 Pearl Street, Suite 1610
New York, New York 10007

> Re: **United States v. Matthew Ianniello, et al.**
> **05 Cr. 774 (KMW)**

Dear Judge Wood:

The Government submits this letter to the Court in opposition to the motions of defendant Matthew Ianniello and other defendants to suppress all or some of the recorded conversations made at THE TABLE and to address the proper procedure and legal standard for conducting an audibility hearing in this matter, which is currently scheduled for Wednesday, July 5, 2006, at 10:00 a.m.

## I. Background

In 2004, the Government's investigation of this matter revealed that Ciro Perrone, a Captain in the Genovese Crime Family of La Cosa Nostra, was regularly conducting Genovese Crime Family business on Tuesday and Thursday evenings at a table at Don Peppe's restaurant in Ozone Park, Queens ("THE TABLE"). In October 2004, the Government obtained court authorization to install a listening device at THE TABLE, and in November 2004, the Government began monitoring conversations conducted at THE TABLE by Perrone and others. Government monitoring of the conversations at THE TABLE terminated in May 2005 when one of the defendants discovered and removed the Government's surveillance equipment. In July 2005, Perrone and nineteen other defendants were arrested on various criminal charges, including racketeering, racketeering conspiracy, extortion, obstruction of justice, loansharking, and gambling.

The Government has identified more than fifty different recorded sessions that were made at THE TABLE that the Government intends to use as evidence against the defendants at the trial of this matter. For ease of identification, the recorded conversations at

THE TABLE are broken up into multiple "sessions" per evening. The Government has provided the defendants with draft transcripts of almost all of these recorded sessions. These recorded sessions have significant probative value since they comprise discussions between a number of the defendants about organized crime activities, including loansharking and obstruction of justice. The vast majority of these recordings are audible and intelligible, and where they are not, the transcripts provided to the jury will so indicate.

The defendants, Matthew Ianniello, Ciro Perrone, Daniel Cilenti, Maurice Napoli, Paul Kahl, Joseph Yannucci, and Frank Ambrosio move to suppress all of the recorded conversations made at THE TABLE on the basis that they are incomplete. In addition, Matthew Ianniello, Ciro Perrone, Salvatore Esposito, Michael DeLuca, Maurice Napoli, Paul Kahl, Joseph Yannucci, and Frank Ambrosio move to suppress individual sessions on the basis that these sessions are inaudible. Collectively, the defendants have identified approximately thirty sessions that they contend are inaudible.[1] In addition, Ianniello has moved to suppress as inaudible an additional twenty sessions that are not on the Government's evidence list. For the following reasons, the Government submits that the defendants' motions to suppress should be denied in their entirety, and the Court should deny the defendants' request for an audibility hearing until the defendants can identify with more specificity the portions of the recordings that they believe are inaudible.

## II. THE TABLE Recordings Should Not Be Suppressed in Their Entirety

The defendants argue that THE TABLE recordings should be suppressed in their entirety based on lack of completeness because the Government failed to capture some of the sounds that occurred at THE TABLE. Ianniello Memo (March 7, 2006) at 2. The defendants do not argue that the Government purposefully destroyed any evidence. Id. at 4. Rather, they argue that the Government chose a method of recording that captured and preserved less than all of the evidence in this matter and that loss of evidence was a result of that choice. Id. at 1. In support of his motion, the defendants cite to a report that defendant Ianniello commissioned from Carroll Audio that concludes, in substance, that the Government could have used a recording format that would have captured more data per second and this would have expanded the frequency range captured by the recordings, although it would have greatly reduced the Government's data storage capacity. See Carroll Audio Report (December 27, 2005).[2] The report does not conclude

---

[1] To assist the Court in conducting the audibility hearing, the Government has compiled a list of all of the recording sessions that meet both of two requirements: 1) the Government has indicated that it intends to use the recording session at the trial of this matter; and 2) the defendants have challenged the session based on audibility. See Exh. A. These recording sessions are listed in chronological order.

[2] The Carroll Audio report writer bases his conclusions, in part, on a review of seven random sessions from THE TABLE. Of those seven, the Government has identified only one

that the Government destroyed or lost relevant evidence or that any particular relevant evidence was not captured. Nevertheless, the defendants argue that, because of this alleged failure to collect evidence, all of the recordings at THE TABLE should be dismissed.

This argument is nonsense. The Government has preserved, and made available to the defense, all of the evidence that the Government collected at THE TABLE, and there is simply no requirement that, for recordings to be admissible, the Government must use the most sophisticated surveillance equipment available – no matter how practical – or the Government must capture every sound that is made at a particular location. Such a requirement would be impractical and would effectively render inadmissible almost every recording ever captured by the Government in any investigation.

The defendants' argument also assumes without basis that, had the Government captured every sound or used the most sophisticated equipment available, exculpatory or even additional relevant evidence would have been generated. Indeed, the defendants do not identify any particular statements that were not captured at THE TABLE by virtue of the equipment used by the investigators. That exculpatory evidence would have been preserved is just self-serving speculation by the defense. The truth is that the Government collected audible evidence as best it could under the circumstances using the equipment that the FBI employs in the regular course of its criminal investigations. To the extent that any audible evidence was not captured on the recording equipment is not a result of the FBI's choice of equipment. Instead, it can only be attributed to the fact that these defendants intentionally chose to conduct their criminal conferences in a location that, at times, was noisy and busy. This clearly was done by the defendants to frustrate efforts to record their conversations – the very conversations that they now disingenuously complain were not sufficiently recorded.

The defendants cite to United States v. Yevakpor, 419 F.Supp.2d 242 (N.D.N.Y. 2006) – a spoliation of evidence case – in support of their motion. In Yevakpor, agents of the U.S. Customs and Border Patrol recorded at least 25 minutes, and maybe more, of video clips taken during a border stop and search of the defendant. Id. at 245. The supervisory agent chose to preserve only three separate one-minute segments out of the total of at least 25 minutes recorded. Id. at 246. The remaining minutes of the recording were eventually destroyed by the recording system which taped over stored images ever six or seven days. Id. at 244. In that case, the Government indicated that it intended to use the three one-minute recordings as evidence at the defendant's trial on narcotics importation charges, and the defendant moved to suppress the images under Rule 106 of the Federal Rules of Evidence for lack of completeness. Id. at 246. The Court suppressed the recordings for lack of completeness and found that the Government had acted improperly when it failed to preserve the full recordings after it had obtained them. Id. at 248. The Court concluded that the loss of evidence was directly a result of "an affirmative order by a Customs officer to only preserve the selected three minutes of tape knowing that the

---

that it intends to use at trial.

Hon. Kimba M. Wood                    -4-                         May 4, 2006

subject of the video was to face criminal proceedings." Id. at 246.

        This case is completely different from Yevakpor. Yevakpor was a spoliation of evidence case in which the Government was sanctioned by the Court through suppression of evidence for the Government's intentional failure to preserve relevant evidence that it, at one point, possessed. Id. at 251-52. Here, there is no issue of spoliation of evidence because the defendants do not argue, and cannot argue, that the Government ever possessed relevant evidence from THE TABLE that is not presently available to the defendants. Rather, the defendants simply argue that the Government failed to collect all possible evidence in its investigation of the conversations at THE TABLE, Ianniello Memo at 2 ("Simply put, the sounds were never recorded in the first place."), and they speculate that, had the Government done so, some of the portions that would have been recovered would be exculpatory. This argument is pure speculation and does not justify suppression of all of the recorded conversations made at THE TABLE. Accordingly, the defendants' motion to dismiss all of the recordings at THE TABLE should be denied.

### III. The Court Should Disregard the Request for the Court to Review

        The defendant Matthew Ianniello requests that the Court review for an audibility determination approximately twenty sessions that were recorded at THE TABLE but *have not* been designated by the Government as recordings that we intend to use at the trial of this matter. The defendant provides absolutely no explanation for this request. Logically, this request should be denied because to honor this request would serve only to waste the Court's valuable time.

### IV. None of the Individual Sessions Should Be Suppressed

        Finally, the defendants, Matthew Ianniello, Ciro Perrone, Salvatore Esposito, Michael DeLuca, Maurice Napoli, Paul Kahl, Joseph Yannucci, and Frank Ambrosio move to suppress individual recoding sessions based on their allegation that the sessions are inaudible. Collectively, the defendants have identified approximately thirty sessions that they contend are inaudible. Many of these sessions are twenty or thirty minutes in length. In total, the challenged sessions comprise more than six hours of recordings. The defendants do little more than identify the sessions they challenge. In most cases, the defendants simply identify recording sessions by number with no explanation as to what portion of the conversation is inaudible.

        The Second Circuit has expressed its "clear preference for the admission of recordings notwithstanding some ambiguity or inaudibility." United States v. Arango-Correa, 851 F.2d 54, 58 (2d Cir 1988) (citing United States v. Bryant, 480 F.2d 785, 790 (2d Cir. 1973)). Indeed, "[t]he mere fact that some portions of a tape recording are inaudible does not by itself require exclusion of the tape." Arango-Correa, 851 F.2d at 58; see also Bryant, 480 F.2d at 790 (approving admission of tapes even though it found "some parts of the tape were totally inaudible" and that "[o]ther parts were so garbled that only some jurors were able to understand what was being said"). As one court has explained, to exclude a recording simply because

portions of it are inaudible or incomplete, without a positive showing of deception, "is no more valid" than to exclude the testimony of a witness because of his or her "failure to overhear all of a conversation." Monroe v. United States, 234 F.2d 49, 54-55 (D.C. Cir. 1956) (cited with approval in 1 Weinstein's Evidence ¶ 106[01], at 106-12 (1986)). Thus, a recording is admissible unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy. Id. (citing Bryant, 480 F.2d at 790 (internal citation omitted)).

In deciding whether a tape recording should be admitted, a court must "focus[] on the probative nature of the tapes, and not merely their audibility." Arrango-Correa at 58-59; see also Bryant, 480 F.2d at 790 ("Nor can we say that the inaudible parts are so substantial as to render the remainder more misleading than probative"); United States v. Botero, No. 93 Cr. 274 (JFK), 1993 WL 427027, at *2 (S.D.N.Y. Oct. 18, 1993) ("If the Court concludes that the probative value of N-4 outweighs its potential to mislead, the fact that portions of it are inaudible or unintelligible goes to 'weight, not . . . admissibility.'" (citation omitted)). Further, a court may admit small portions of a recording, where probative, even if significant portions of the same recording are inaudible or unintelligible. See United States v. Walker, No. 99 Cr. 379 (BSJ), 1999 WL 777885, at *3 (S.D.N.Y. Sept. 29, 1999) (admitting about 24 minutes of 3 hour conversation despite the defendant's argument that significant portions of the recording were inaudible and unintelligible).

Transcripts of recorded conversations, where accurate, are routinely admitted as an aid in listening to tape recordings. See, e.g., United States v. Chiarizio, 525 F.2d 289, 293 (2d Cir. 1975); Bryant, 480 F.2d at 790-91; Walker, 1999 WL 777885, at *3. Moreover, where a tape recording contains discussions in a foreign language, a court may receive the transcripts in evidence. See United States v. Chalarca, 95 F.3d 239, 246 (2d Cir. 1996). To the extent that the Government and a defendant disagree about the accuracy of a transcript, or the content of a tape, the proper procedure is not to exclude the transcript but to receive transcripts from both sides. Chiarizio, 525 F.2d at 293. In the context of an audibility hearing, transcripts are particularly useful because the fact that recordings can be accurately transcribed is evidence that they are audible. See United States v. McDonald, 1999 WL 753488 at *2 (2d Cir. Sept. 16, 1999).

Objections to the audibility of a transcribed conversation or accuracy of a transcript must be specific. Gutierrez-Flores v. United States, No. 97 Civ. 5677 (CSH), 1999 WL 147735, at *9 (S.D.N.Y. Mar. 18, 1999). A defendant cannot simply point to entire recordings and allege that they are inaudible. Instead, the defendant must point to specific portions of a recording, or of the transcript of the recording, and allege that the specific portion is so unintelligible as to render the recording untrustworthy. Id.

As a preliminary matter, the Court should require the defendants to specifically identify those portions of each of the recordings that they claim are inaudible and explain why it is that such inaudibility renders the recording, or a portion of the recording, untrustworthy. Here, the defendants collectively point to a total of approximately six hours of conversation, identified wholesale by recording session, and summarily declare inaudible each one of those recording

sessions in its entirety. With the exception of the defendant, Paul Kahl, none of the defendants even attempts to assist the Court by identifying some portion of the challenged recordings or draft transcripts that they claim are inaudible. In addition, the defendants give no thought to the fact that, within a recording session, there may be audible portions that are not rendered untrustworthy even if the Court were to determine that some other section is inaudible. In effect, the defendants expect that, simply by virtue of identifying a recording session as one about which they have general audibility concerns, the Court will then do their work for them and sift through hours of conversation, much of which cannot seriously be the subject of an audibility hearing, and make audibility determinations. This is clearly insufficient to justify a hearing, and the Court should require the defendants to come forward with more specific objections before holding a hearing.

At the audibility hearing – which the Government believes the Court does not necessarily have to hold in the presence of the parties – the Court should review the challenged portions of the recorded sessions both for probative value and for audibility. Even if significant portions of a particular conversation are inaudible, the Court should only exclude the conversation or portion of the conversation if it is clear that the probative value of the audible portions are outweighed by the potential of the recordings to mislead the jury. Arrango-Correa at 58-59; Bryant, 480 F.2d at 790; Botero, 1993 WL 427027 at *2. The Government submits that none of the recorded sessions it has identified will meet this rigorous standard.

Finally, the Court should permit transcripts of the recorded conversations to be used in this case both at the audibility hearing and at the trial of this matter. The tapes, while audible and intelligible, are at times, difficult to follow due to their rapid pace and the occasional occurrence of simultaneous conversations. To the extent that defendants wish to challenge the accuracy of the transcripts, which is an issues separate and apart from audibility, they can submit alternative versions of the transcripts. Permitting the use of transcripts will be helpful to the Court at the hearing and to the jury at trial and may avoid repeated replaying of the tapes.

We hope that the Court finds this submission useful in conducting an audibility hearing in this matter.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By: _____
Timothy J. Treanor/Stephen A. Miller
Assistant United States Attorneys
(212) 637-2362/2210

cc: All Defense Counsel

Hon. Kimba M. Wood -7- May 4, 2006

## List of Challenged Recorded Conversations

| #   | Date | Session | Duration |
|-----|------|---------|----------|
| 1.  | November 2, 2004 (5:18 p.m.) | Session 17 | 35:01 |
| 2.  | November 18, 2004 (7:20 p.m.) | Session 207 | 23:52 |
| 3.  | November 23, 2004 (4:54 p.m.) | Session 222 | 21:23 |
| 4.  | November 30, 2004 (6:47 p.m.) | Session 279 | 03:36 |
| 5.  | December 2, 2004 (6:13 p.m.) | Session 311 | 13:27 |
| 6.  | December 7, 2004 (6:05 p.m.) | Session 340 | 03:28 |
| 7.  | December 7, 2004 (7:07 p.m.) | Session 360 | 23:52 |
| 8.  | December 9, 2004 (6:30 p.m.) | Session 401 | 02:44 |
| 9.  | December 9, 2004 (6:45 p.m.) | Session 404 | 03:45 |
| 10. | December 17, 2004 (5:58 p.m.) | Session 464 | 10:59 |
| 11. | December 17, 2005 (6:40 p.m.) | Session 470 | 09:33 |
| 12. | December 22, 2004 (8:43 p.m.) | Session 534 | 31:55 |
| 13. | December 28, 2004 (6:09 p.m.) | Session 562 | 02:44 |
| 14. | January 18, 2005 (5:07 p.m.) | Session 33 | 05:17 |
| 15. | January 21, 2005 (5:20 p.m.) | Session 95 | 04:21 |
| 16. | January 21, 2005 (6:50 p.m.) | Session 119 | 28:21 |
| 17. | January 21, 2005 (7:20 p.m.) | Session 120 | 13:53 |
| 18. | January 27, 2005 (5:06 p.m.) | Session 167 | 29:46 |
| 19. | February 1, 2005 (7:56 p.m.) | Session 262 | 04:13 |
| 20. | February 3, 2005 (8:02 p.m.) | Session 316 | 31:39 |
| 21. | February 8, 2005 (5:18 p.m.) | Session 337 | 05:04 |
| 22. | February 8, 2005 (5:37 p.m.) | Session 342 | 02:06 |
| 23. | February 8, 2005 (6:55 p.m.) | Session 352 | 07:38 |
| 24. | February 11, 2005 (4:54 p.m.) | Session 419 | 02:06 |
| 25. | February 17, 2005 (7:51 p.m.) | Session 511 | 08:13 |
| 26. | February 22, 2005 (7:45 p.m.) | Session 579 | 21:16 |
| 27. | March 24, 2005 (7:05 p.m.) | Session 819 | 06:55 |
| 28. | March 24, 2005 (7:13 p.m.) | Session 820 | 18:57 |
| 29. | April 12, 2005 (5:12 p.m.) | Session 1003 | 17:39 |
| 30. | April 12, 2005 (6:52 p.m..) | Session 1024 | 11:44 |
| 31. | April 12, 2005 (7:28 p.m.) | Session 1030 | 07:44 |