TJT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA          :

           -v-                    :    INFORMATION

MATTHEW IANNIELLO,                :    S5 05 Cr. 774 (KMW)
    a/k/a "Matty the Horse,"
                                  :

           Defendant.             :
- - - - - - - - - - - - - - - - -x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: SEP 14 2006
```

**COUNT ONE**

Racketeering Violation

The United States Attorney charges:

The Enterprise

1.  At all times relevant to this Indictment, MATTHEW IANNIELLO, a/k/a "Matty the Horse," the defendant, and others known and unknown, were members and associates of the Genovese Organized Crime Family of La Cosa Nostra (the "Genovese Organized Crime Family"). The Genovese Organized Crime Family was a criminal organization whose members and associates engaged in numerous acts of violence and other crimes, including murder; attempted murder; extortion; labor racketeering; the financing and making of extortionate extensions of credit and the collection of extensions of credit through extortionate means (commonly known as "loansharking"); robbery; and the operation of illegal gambling businesses.

2. The Genovese Organized Crime Family, including its leadership, membership, and associates, constituted an "enterprise," as that term is defined in Title 18, United States Code, Section 1961(4) -- that is, a group of individuals associated in fact. This enterprise was engaged in, and its activities affected, interstate and foreign commerce. The Genovese Organized Crime Family was an organized criminal group based in New York City that operated in the Southern District of New York and elsewhere and constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The Genovese Organized Crime Family was referred to by its members and associates in various ways, including as a "cosa nostra," a "Family," and "this thing of ours."

3. The Genovese Organized Crime Family was part of a nationwide criminal organization known by various names, including the "Mafia" and "La Cosa Nostra" ("LCN"), which operated through entities known as "Families." The Genovese Organized Crime Family took its name from one of its early leaders, Vito Genovese. In addition to the Genovese Organized Crime Family, five other Families operated in the New York City and New Jersey area, namely, the Gambino Organized Crime Family of LCN, the Lucchese Organized Crime Family of LCN, the Colombo

Organized Crime Family of LCN, the Bonanno Organized Crime Family of LCN, and the Decavalcante Organized Crime Family of LCN.

4. The Genovese Organized Crime Family operated through groups of individuals known as "crews" and "regimes," most of which were based in New York City. Each "crew" had as its leader a person known as a "Caporegime," "Capo," "Captain," or "Skipper," and consisted of "made" members, sometimes known as "Soldiers," "wiseguys," "friends of ours," and "good fellows." Soldiers were aided in their criminal endeavors by other trusted individuals, known as "associates," who sometimes were referred to as "connected" or identified as "with" a Soldier or other member of the Family. Associates participated in the various activities of the crew and its members.

5. Each Capo was responsible for supervising the criminal activities of his crew and provided Soldiers and associates with support and protection. In return, the Capo typically received a share of the illegal earnings of each of his crew's Soldiers and associates, which was sometimes referred to as "tribute."

6. Above the Capos were the highest-ranking members of the Genovese Organized Crime Family, commonly referred to as the Administration. The head of the Genovese Organized Crime Family was known as the "Boss," who was ordinarily assisted by an "Underboss" and a "Consigliere," or counselor. The Boss,

Underboss, and Consigliere were responsible for, among other things, setting policy, resolving disputes between and among members of the Genovese Organized Crime Family, and resolving disputes between members of the Genovese Organized Crime Family and members of other criminal organizations. The Administration of the Genovese Organized Crime Family was also responsible for overseeing the criminal activities of the Family's Soldiers and associates, and was at times called upon to make decisions regarding those criminal endeavors.

7. At various times relevant to this Information, members of the Genovese Organized Crime Family were temporarily appointed to serve as Boss, Underboss, Consigliere, or Capo in place of another member holding that position. Whenever this occurred, the member holding the temporary appointment would function in an "acting" capacity for the other member, who continued to hold the "official" position in the Family. In addition, at various times relevant to this Information, members of the Genovese Organized Crime Family served on a committee or ruling panel, a group of high-ranking members of the Family who assisted and, at times, made decisions with, or on behalf of, the Boss and the Acting Boss of the Family.

8. The Boss, Underboss, and Consigliere (whether official or acting) and, at times, the members of the ruling panel, supervised, supported, protected, and disciplined the

Capos, Soldiers, and associates, and regularly received reports regarding their various activities. In return for their supervision and protection, the Boss, Underboss, and Consigliere and members of the ruling panel typically received part of the illegal earnings of each crew.

### The Defendant

9. MATTHEW IANNIELLO, a/k/a "Matty the Horse," the defendant, was, at various times relevant to this Indictment, a Capo and Acting Boss of the Genovese Organized Crime Family. As Acting Boss, IANNIELLO was responsible for, among other things, supervising the illegal activities of all of the members and associates of the Genovese Organized Crime Family and resolving disputes with other Organized Crime Families. In particular, IANNIELLO regularly received a portion of the proceeds generated from the illegal activities of the Genovese Organized Crime Family. In addition, IANNIELLO met with members and associates of the Genovese Organized Crime Family to discuss various criminal schemes. Among IANNIELLO's criminal activities were participation in labor racketeering and obstruction of justice.

### Purposes of the Enterprise

10. The purposes of the enterprise included the following:

a. Enriching the leaders, members, and associates of the enterprise through, among other things: (i) the

extortionate control of businesses, labor unions, persons, and property through threats of physical and economic harm; (ii) labor racketeering; (iii) the making, financing, and collection of extortionate extensions of credit, commonly known as "loansharking;" and (iv) the operation of illegal gambling businesses;

  b. Preserving and augmenting the power, territory, and financial profits of the enterprise through intimidation, violence, and threats of physical and economic harm; and

  c. Keeping victims and citizens in fear of the enterprise and its leaders, members, and associates by: (i) identifying the enterprise, its members, and its associates with La Cosa Nostra or the "Mafia;" (ii) causing and threatening to cause economic harm; and (iii) committing and threatening to commit physical violence.

## Means and Methods of the Enterprise

11. Among the means and methods by which the defendants and other enterprise members and associates conducted and participated in the conduct of the affairs of the enterprise were the following:

  a. To protect and expand the enterprise's business and criminal operations, members and associates of the enterprise murdered, threatened to murder, and assaulted persons

6

who engaged in activity that jeopardized (i) the power and criminal activities of the enterprise and the power and criminal activities of fellow LCN Families, (ii) the power of leaders of the enterprise, and (iii) the flow of criminal proceeds to the leaders of the enterprise.

b. Members and associates of the enterprise promoted a climate of fear in the community through threats of economic harm and violence.

c. Members and associates of the enterprise generated income for the enterprise through, among other things, (i) extortion; (ii) labor racketeering; (iii) the operation of illegal gambling businesses; and (iv) loansharking.

d. Members and associates of the enterprise at times engaged in criminal conduct or coordinated their criminal activities with leaders, members, and associates of other LCN Families. At other times, members and associates of the enterprise met with leaders, members, and associates of other LCN Families to resolve disputes over their criminal activities.

e. Members and associates of the enterprise controlled various labor unions, including Local 1181 of the Amalgamated Transit Union, and used their control over the unions to obtain benefits for the enterprise.

f. Members and associates of the enterprise used various techniques to avoid law enforcement scrutiny of the

7

enterprise's criminal activities. Members and associates of the enterprise typically used coded language to make arrangements for meetings and to refer to other members and associates of the enterprise, and took other steps to frustrate law enforcement's attempts to overhear their discussions. Members and associates of the enterprise also engaged in other evasive conduct, such as whispering and speaking in hushed tones in an effort to obstruct potential law enforcement eavesdropping, and not specifying the names of those about whom they were speaking. Members and associates of the enterprise also attempted to locate concealed recording equipment used by law enforcement officials to record their discussions and activities.

      g.    In order to frustrate investigations of their criminal conduct, members and associates of the enterprise attempted to, and did, obstruct justice by, among other things, meeting with individuals subpoenaed by federal grand juries and influencing the information that those individuals would provide to law enforcement authorities.

      h.    Members and associates of the enterprise attempted to identify and did identify individuals suspected of providing, or deemed likely to provide, information to law enforcement about the enterprise, its members and activities, and about other LCN Families.

i. To conceal their receipt of money generated from their criminal activities, members and associates of the enterprise concealed their ownership of various assets that were purchased with proceeds of their criminal activities, including restaurants in the New York City area.

The Racketeering Violation

12. From at least in or about the 1990s, up through and including in or about July 2005, in the Southern District of New York and elsewhere, MATTHEW IANNIELLO, a/k/a "Matty the Horse," the defendant, and others known and unknown, being persons employed by and associated with the racketeering enterprise described in Paragraphs 1 through 11 above, namely, the Genovese Organized Crime Family, which enterprise was engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully, intentionally, and knowingly conducted and participated, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), that is, through the commission of the following racketeering acts:

The Pattern of Racketeering

13. The pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisted of the following acts:

**Racketeering Act One — Unlawful Receipt Of Labor Payments**

14.  In or about 2005, in the Southern District of New York and elsewhere, MATTHEW IANNIELLO, a/k/a "Matty the Horse," the defendant, and others, among whom were officers and employees of a labor organization which represented, sought to represent, and would admit to membership, the employees of employers who were employed in an industry affecting commerce, unlawfully, willfully, and knowingly did request, demand, receive, and accept, and agree to receive and accept, a payment, loan, and delivery of money and other thing of value, from such employers, associations of such employers, and persons acting in the interest of such employers, to wit, IANNIELLO assisted officers and employees of Local 1181 of the Amalgamated Transit Union ("Local 1181"), in receiving improper payments from the owners of numerous school bus companies whose employees Local 1181 either represented, sought to represent, or would admit to membership and whose employees were employed in an industry affecting commerce, in violation of Title 29, United States Code, Section 186 and Title 18, United States Code, Section 2.

**Racketeering Act Two - Obstruction of Justice**

15.  From in or about January 2005, up through and including in or about June 2005, in the Southern District of New York and elsewhere, MATTHEW IANNIELLO, a/k/a "Matty the Horse," the defendant, and others known and unknown, unlawfully,

willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to corruptly obstruct, influence, and impede an official proceeding, to wit, an investigation of a federal grand jury in the Southern District of New York into, among other things, the involvement of the Genovese Organized Crime Family in the affairs of Local 1181 of the Amalgamated Transit Union, in violation of Title 18, United States Code, Sections 1512(c) and (k).

(Title 18, United States Code, Section 1962(c).)

**FORFEITURE ALLEGATION**

16. The allegations contained in Count One of this Information are repeated, realleged, and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963. Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 1963 in the event of the defendant's conviction under Count One of this Information.

17. The defendant, MATTHEW IANNIELLO, a/k/a "Matty the Horse,"

   i. has acquired and maintained interests in violation of Title 18, United States Code, Section 1962, which

interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1); and

   ii. has property constituting and derived from proceeds obtained, directly and indirectly, from the aforesaid racketeering activity, in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

  18. The interests of the defendant subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1), (a)(2), and (a)(3), include but are not limited to:

  a. At least $1,000,000 in United States currency.

### Substitute Assets

  19. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the court;

          d.    has been substantially diminished in value; or

          e.    has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property, including but not limited to:

          a.    Any and all right, title, and interest held by MATTHEW IANNIELLO, a/k/a "Matty the Horse," the defendant, in the real property and appurtenances known as 10 Tredwell Drive, Old Westbury, New York, registered in the names of Beatrice Ianniello, Kim Marie Ianniello, and Matthew Ianniello, Jr.;

(Title 18, United States Code, Section 1963.)

*[signature: Michael J. Garcia]*
MICHAEL J. GARCIA
United States Attorney TJT

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

MATTHEW IANNIELLO,

a/k/a "Matty the Horse,"

Defendant.

INFORMATION

S5 05 Cr. 774 (KMW)

(18 U.S.C. § 1962(c).)

MICHAEL J. GARCIA
United States Attorney.